RUTH BURKE, Adm'r of the Estate of Edward E. Burke, Deceased, Plaintiff-Appellant, v. TOLEDO, PEORIA & WESTERN RAILROAD COMPANY *et al.*, Defendants-Appellees.

First District (1st Division) No. 84—0178

Opinion filed September 22, 1986.—Rehearing denied October 29, 1986.

Thomas P. Cernek, of Chicago, for appellant.

Weston W. Marsh, of Chicago, for appellee Toledo, Peoria & Western Railroad Company.

No brief filed for appellees Consolidated Rail Company and Edward E. Wyss.

JUSTICE BUCKLEY delivered the opinion of the court:

Plaintiff, Ruth Burke, as administrator of the estate of decedent Edward Burke, brought a wrongful death action against defendant Toledo, Peoria and Western Railroad Company and one of its engineers, seeking to recover damages for fatal injuries decedent sustained when his automobile collided with defendant's train. Following a trial, the jury rendered a verdict for the railroad, the engineer having been dismissed on plaintiff's motion at the conclusion of the evidence. Judgment was entered on the jury's verdict and plaintiff appeals, contending that: (1) the trial court improperly admitted the testimony of an accident-reconstruction expert; (2) the trial court erred in permitting certain demonstrative evidence to be viewed by the jury; (3) defense counsel's conduct deprived her of a fair trial; and (4) the jury's verdict in favor of the defendant was against the manifest weight of the evidence. For the following reasons, we affirm.

The record reflects that on September 27, 1980, at approximately 1:30 p.m., Edward Burke was killed when his car going southbound on Weston Blacktop Road in Weston, collided with defendant's westbound train. Three sets of tracks cross Weston Blacktop Road: the Toledo, Peoria & Western main line, a spur track, and a switch that splits off as a third track. The crossing is marked by a circular yellow "RR" warning sign along the road, a white "RXR" painted on the pavement approaching the crossing, and two standard crossing signals each equipped with four lights. It was undisputed that at the time of the accident, the lights were operating. Prior to the accident, however, the flashing lights had on occasion been activated when no train was present.

For a car traveling south on Weston Blacktop Road, there is 20 feet of rough crossing, extending from the first rail of the spur track to the first rail of the main line. Cars could traverse it safely at 15 to 30 miles per hour while freight trains would normally maintain a speed of 49 miles per hour through the area. At the time of the collision, a cornfield with corn stalks reaching 4 feet above the road was situated at the northeast corner of the intersection. A row of trees lined the east side of Weston Blacktop Road and a clump of bushes stood parallel to the tracks, 25 feet from the intersection at the edge of the cornfield.

On the day in question, the weather was clear, and three witnesses saw the collision and the events immediately preceding it.

Larry Thacker testified that at the time of the accident, he was helping repair a truck not far from the intersection. Thacker heard a whistle, turned around, and saw a train approaching at approximately 40 miles per hour. He also noticed a car approaching the intersection at about 45 miles per hour. Thacker further testified that prior to the collision, he observed the front of the car "come down," indicating a last second attempt by the driver to apply the brakes. He heard the train brake at impact.

Bob Comens testified that he was driving north on Weston Blacktop Road when he observed a train approaching at 40 miles per hour and heard its horn several times. Comens stopped for the flashing crossing lights and waited for the train to pass. As he waited, he noticed an oncoming southbound car traveling at a speed of approximately 50 miles per hour. The car did not slow down until just prior to impact, when the front end of the car took a "nose dive" as the driver apparently hit the brakes.

Defendant's engineer, Edward Wyss, who was acting as a lookout on the right side of the train, testified that he first saw decedent's car when the train, going 40 miles per hour, was a quarter mile from the crossing. At that time, the car, also a quarter mile from the intersection, was traveling at an estimated 50 to 60 miles per hour. Wyss noticed the car a second time when the train was 40 to 45 feet from the crossing and the car was 50 to 55 feet away. Both vehicles were maintaining their same speed. Wyss further testified that he applied the brakes at impact which was as fast as he could upon perceiving the ensuing danger. When the collision occurred, the car went "sailing through the air" and landed 60 feet from the crossing. Shortly thereafter, the driver died.

Wyss also stated that he sounded the horn and bell together 1,320 feet from the crossing and continued to do so until the crossing was reached. Although Wyss was not wearing his prescription glasses on the day of the accident, he testified that he rarely wore them, was licensed to drive without them, and did not require them for distances less than 1,500 feet.

Illinois State Trooper Ralph McClennan testified that he was called to investigate the scene of the accident. After interviewing several witnesses, McClennan retraced the decedent's route on Weston Blacktop Road to determine what the decedent was able to see prior to the collision. While traveling south, McClennan got a clear view of the train which was still on the tracks. He also observed that the train was well elevated above the cornfield. At no point along the route to the crossing would the bushes or trees have obscured the de-

cedent's view. One half mile from the intersection, flashing signals were clearly visible to McClennan.

■■ We first address plaintiff's contention that the trial court erred in allowing defendant's expert, Dr. Lynn Fricke of the Traffic Institute at Northwestern University, to state an opinion on breaking distances. Plaintiff argues that Fricke's testimony was reconstructive, and therefore unnecessary in light of the eyewitness testimony adduced at trial. (*Plank v. Holman* (1970), 46 Ill. 2d 465, 264 N.E.2d 12.) We disagree.

We initially note that plaintiff has not properly preserved this issue for appeal. The record reveals that plaintiff's counsel made two objections at trial to Fricke's testimony. In the first objection, counsel offered to stipulate to the expertise of the witness. The second objection involved whether a proper foundation had been laid for Fricke's testimony since he had viewed the scene one year after the accident. At a sidebar, plaintiff's counsel acknowledged that Fricke was apparently being offered as an expert witness "in the field of elapsed time, stopping distance, and so forth," and agreed to let him answer hypothetical questions. No objection was made, however, to the reconstructive nature of the testimony either at trial or in a post-trial motion. Accordingly, we deem it waived. *People v. Carlson* (1980), 79 Ill. 2d 564, 576, 404 N.E.2d 233.

■ Even if plaintiff had made a timely objection, Fricke's testimony was not that of a reconstructionist. In *Finfrock v. Eaton Asphalt Co.* (1976), 41 Ill. App. 3d 1020, 355 N.E.2d 214, a professor of transportation at the University of Illinois explained the formula and variables in determining braking distances at trial. He further testified to various minimum and maximum braking distances in response to hypothetical questions based on the type of vehicle the plaintiff drove and the road conditions at the time of the accident. In affirming the admission of this expert testimony, the court distinguished between reconstruction testimony which recreates the events of an accident from given information such as skid marks, debris, and damage to the vehicles, and the professor's testimony which focused on a scientifically determinable aspect of the accident. The court also stated that " '[t]he trial judge is allowed a wide area of discretion in permitting expert testimony which would aid triers of fact in their understanding of the issues.' " 41 Ill. App. 3d 1020, 1023, 355 N.E.2d 214, quoting *Jamison v. Lambke* (1974), 21 Ill. App. 3d 629, 635, 316 N.E.2d 93.

As the professor in *Finfrock*, Fricke responded to a series of hypothetical questions based on evidence heard by the jury. His answers

were limited to calculations of braking, stopping, and skidding distances, braking effects, and braking time, all of which were presented to assist the jury in its analysis of the case. He did not make any factual assertions about the events preceding the collision nor attempt to recreate the accident as a reconstruction expert. Thus, the trial court did not abuse its discretion in admitting Fricke's informative testimony.

■ We next consider whether certain demonstrative materials utilized by defendant in the courtroom were improperly allowed by the trial court. Specifically, plaintiff challenges the presentation of four items of demonstrative evidence: (1) a railroad-crossing standard equipped with crossbars and flashing lights; (2) a hand-drawn diagram of the accident site; (3) five photographs, taken one year after the accident, depicting the visibility of the train's flashers from various distances; and (4) a white plastic "X" demonstration of the markings visible on Weston Blacktop Road.

Courts favor the use of demonstrative evidence to help the jury better understand the issues in a case. (*Ogg v. City of Springfield* (1984), 121 Ill. App. 3d 25, 458 N.E.2d 1331; *Hubbard v. McDonough Power Equipment, Inc.* (1980), 83 Ill. App. 3d 272, 404 N.E.2d 311.) The overriding considerations in admitting demonstrative evidence are relevancy and fairness. (*Lake County Forest Preserve District v. Vernon Hills Development Corp.* (1980), 85 Ill. App. 3d 241, 406 N.E.2d 611, *aff'd* (1982), 92 Ill. 2d 72, 440 N.E.2d 848.) The question of the admissibility of such exhibits is a matter within the trial court's discretion and will be disturbed only on a showing of clear abuse. (*Lowe v. Norfolk & Western Ry. Co.* (1984), 124 Ill. App. 3d 80, 463 N.E.2d 792.) Plaintiff has failed to make this showing.

■ First, the railroad-crossing standard helped several witnesses, particularly Harold Forrest, defendant's signal supervisor, describe the items at the scene of the accident. To eliminate any prejudice, the trial judge specifically prohibited the use of the flashers and insisted the exhibit be removed from the courtroom unless it would be referred to by the witness. Second, the diagram of the accident site assisted all of the eyewitnesses in their testimony and clarified the events preceding the collision for the jury. The only discrepancy in the diagram concerned the length of decedent's skidmarks, which was brought to the jury's attention. Third, the trial judge allowed the five color photographs for a limited purpose: to help the jury determine the visibility of the red flashers at various distances from the crossing. The mere fact that the bushes at the corner of the cornfield had been removed when the photographs were taken does not render

them inadmissible if, after the changes had been acknowledged, the trier of fact understood the correct representation and was not misled. (*Perschall v. Raney* (1985), 137 Ill. App. 3d 978, 986, 484 N.E.2d 1286.) Here, the jury was advised the photographs were taken a year after the accident, that the flashers portrayed had been purposely activated, and that the bushes had been removed in 1981 prior to the photos. Finally, defense counsel's demonstration of the white "X" painted on the roadway approaching the crossing was not misleading because the fact that the shade of plastic used was whiter than the actual roadway "X" was explained to the jury. Therefore, we can find nothing unfair or prejudicial about the manner in which defendant's exhibits were introduced.

■ We next turn to plaintiff's argument that defense counsel's conduct deprived her of a fair trial. Plaintiff cites the following instances of counsel's alleged misconduct: (1) asking plaintiff whether she could see the documents in front of her; (2) asking plaintiff whether there was anything besides her age that she failed to tell the truth about; (3) suggesting to plaintiff's counsel that he could walk on the white plastic roadway "X" to "wear it a little bit"; and (4) objecting to plaintiff's cross-examination of a defense witness on the ground that it was "tedious," "not relevant," and a "sham impeachment."

Generally, counsel's improper comments do not constitute reversible error unless the defendant has thereby been substantially prejudiced. (*Soto v. E. W. Bliss Division of Gulf & Western Manufacturing Co.* (1983), 116 Ill. App. 3d 880, 452 N.E.2d 572.) In *Vandaveer v. Norfolk & Western Ry. Co.* (1966), 78 Ill. App. 2d 186, 206, 222 N.E.2d 897, relied on by plaintiff, the court found substantial prejudice where the plaintiff's counsel's closing arguments "were replete with improper accusations directed to the motives of defendant's counsel." In his closing, plaintiff's counsel referred to excluded evidence, made unwarranted characterizations of defense counsel, and accused defense counsel of giving misinformation and withholding evidence from the jury. Here, we do not believe that defense counsel's remarks "were replete with improper accusations" so as to prejudice plaintiff and deny her a fair trial.

■ Lastly, plaintiff maintains that the jury's verdict in favor of the defendant is contrary to the manifest weight of the evidence. "For a judgment to be against the manifest weight of the evidence it must appear that the conclusions opposite to those reached by the trier of fact are clearly evident." (*J. R. Sinnott Carpentry, Inc. v. Phillips* (1982), 110 Ill. App. 3d 632, 636, 443 N.E.2d 597.) Based on the evidence described herein, no conclusion opposite to the one

reached by the jury in this case is clearly evident. Accordingly, we upheld the verdict for the defendant.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

QUINLAN, P.J., and CAMPBELL, J., concur.