MARGARET LUNDQUIST *et al.*, Plaintiffs-Appellees, v. KELLER B. NICKELS, d/b/a Nickels Pit, Defendant-Appellant.

First District (4th Division)   No. 1—90—3377

Opinion filed November 25, 1992.—Rehearing denied January 7, 1993.

Pretzel & Stouffer, Chartered, of Chicago (Robert M. Chemers, Michael G. Bruton, and Donald J. Kindwald, of counsel), for appellant.

John J. Henely, of Chicago (David A. Novoselsky and Linda A. Bryceland, of counsel), for appellees.

JUSTICE McMORROW delivered the opinion of the court:

Margaret Lundquist (hereinafter plaintiff) filed suit against Keller B. Nickels, d/b/a Nickels Pit (hereinafter defendant), for injuries plaintiff sustained when a motorcycle plaintiff was driving on defendant's property went over a drop-off also located on the premises. Plaintiff claimed that her injuries were proximately caused by defendant's negligent failure to warn or otherwise prevent persons from driving over the drop-off. Plaintiff's husband, Steven, also filed suit for loss of consortium.

The cause was submitted to a jury trial. At the close of all of the evidence, the jury returned verdicts in favor of plaintiff and her husband and against the defendant. The jury assessed plaintiff's damages at $267,000, and reduced this amount by 50% for plaintiff's comparative negligence, resulting in a net damage award to plaintiff in the amount of $133,500. The jury also awarded plaintiff's husband $5,000 for loss of consortium. The trial court subsequently reduced the plaintiff's damages by the amounts rendered to plaintiff in settlements with other defendants not involved in this appeal, and entered judgment in conformity with the jury's assessment of the defendant's liability for the injuries sustained by the plaintiff and her husband. Defendant appeals.

Upon review, the defendant argues that the judgment against him should be reversed because he owed no duty to the plaintiff to exercise reasonable care in his maintenance of the property. In this regard, defendant contends that he had no duty to plaintiff under principles of ordinary negligence because plaintiff was a licensee, and not an invitee, on the property. Defendant also maintains that even if plaintiff was an invitee on the premises, he is not liable for her injuries because of the limited immunity provided for in the Recrea-

tional Use of Land and Water Areas Act. (Ill. Rev. Stat. 1983, ch. 70, par. 31 *et seq.*) Defendant further contends that the judgment against him should be reversed because the evidence failed to show that his allegedly negligent acts were the proximate cause of the plaintiff's accident.

Defendant asserts that he is entitled to a new trial because the court committed reversible error when it: (1) refused to permit the jury to view the scene of the accident; (2) admitted certain evidence regarding the scene of the incident and the extent of the plaintiff's injuries; (3) gave the jury certain instructions offered by the plaintiff and refused other instructions submitted by the defendant; and (4) refused to submit special interrogatories to the jury proffered by the defendant. The defendant also contends that the amount of damages awarded by the jury was excessive.

We affirm the trial court's judgment against the defendant and in favor of the plaintiff. We further modify the amount awarded to plaintiff's husband by the percentage attributed to plaintiff's comparative fault, and affirm the trial court's judgment in favor of plaintiff's husband as modified.

The pertinent testimony at trial was as follows. Steven O'Donnell (hereinafter O'Donnell), plaintiff's younger brother, testified that on May 29, 1983, he accompanied plaintiff, plaintiff's husband, and Bill Lee to defendant's property. O'Donnell stated that plaintiff's husband, Lee, and O'Donnell himself each owned a motorcycle and intended to ride the vehicles on defendant's property. Because the parties referred to the motorcycles in question as "dirt bikes" throughout trial, we will also refer to the vehicles by that term.

O'Donnell testified that he had ridden on the property several times in the past, and that it was customary that a payment of $4 per dirt bike would be collected by the owner of the property at some point while they were on the premises. O'Donnell stated that on the date in question, the owner drove over to them in a truck. O'Donnell identified this individual in court as the defendant. O'Donnell stated that he, plaintiff's husband, and Lee each paid $4 to defendant, because the charge was based on the number of dirt bikes brought to the site. O'Donnell testified that there were no restrictions on how many persons could ride the dirt bike.

O'Donnell testified at trial that they unloaded the dirt bikes from their trucks and began riding on the property. He stated that plaintiff stayed behind near the parking area where they left their trucks. O'Donnell testified that he later returned to the parking area after approximately one hour, and that plaintiff asked him if she could ride

his dirt bike. O'Donnell stated that at first he refused her request, but that plaintiff insisted and he allowed her to ride the bike. O'Donnell stated that to his knowledge, plaintiff had never previously ridden a dirt bike or any other type of motorcycle.

O'Donnell stated that he explained to plaintiff how to operate the bike and that she understood his explanations. O'Donnell then watched as plaintiff rode the bike in an oval pattern in a grassy area near the parking lot. When she returned to where O'Donnell was standing, plaintiff asked if she could go around a second time. Again O'Donnell initially refused and then acquiesced in her request.

O'Donnell testified that on plaintiff's second oval ride around the grassy area, plaintiff "got to the top of the oval, then kind of turned and gave it a little bit too much gas, and started heading toward the bushes" at the end of the grassy area. O'Donnell stated that plaintiff was "looking down like she was trying to find the brake." O'Donnell testified that he then saw plaintiff go through the bushes and over a drop-off. O'Donnell stated that he and Lee, who had been in the parking area, went running over to where plaintiff had gone off the drop-off. O'Donnell testified that the drop-off was approximately 50 to 60 feet deep, and very steep. He stated that he and Lee climbed to the bottom of the drop-off, where they found plaintiff. An ambulance was summoned and plaintiff was transported to an area hospital.

O'Donnell testified that he could not see the drop-off from where he was standing while the plaintiff had been riding the dirt bike. O'Donnell also stated that he never told plaintiff about the drop-off, because "[i]t never came to mind."

Plaintiff testified that on the date of the incident, she accompanied her brother, husband, and their friend Bill Lee to the defendant's property "because it was a nice weekend." Plaintiff acknowledged that she had never previously ridden a dirt bike and that she did not go to the defendant's property with the intention of riding a bike. Plaintiff could not recall ever having been on the defendant's property on any prior occasion.

Plaintiff's account of the accident was substantially similar to that given by her brother. Plaintiff testified that she rode her brother's bike on an area near the parking lot where she had earlier seen some adults teaching small children how to ride dirt bikes. According to plaintiff, she looked around from the parking area "and it was not evident there was a drop-off there."

Plaintiff stated that the accident occurred during her second ride on the dirt bike. She related that she rode the bike away from her brother and started to make a left turn. She stated that as she

started coming around to the left, she "let the clutch out a little too fast," accelerated, and unsuccessfully tried to find the brake pedal in order to stop the bike. Plaintiff testified that "all of a sudden" she realized she was at "the end of the road," that she "turned the bike to the left and went off the cliff on an angle," and that at that time she "lost total control of the bike."

Plaintiff testified that she was approximately six to seven feet from the drop-off when she first noticed it. Plaintiff also testified that if she had been warned that there was a drop-off there, she would not have ridden the bike in the area where she did in fact ride it. She estimated that she was going approximately 30 to 35 miles per hour when she went over the drop-off.

Plaintiff related that she had asked her husband if she could learn to ride his bike, but that he had said he did not think his bike was appropriate and did not want her to ride it because the bike was very large and plaintiff could not hold the bike upright. Plaintiff stated that her brother's bike was much smaller than that of her husband.

Bill Lee testified in pertinent part that he saw plaintiff and her brother and could remember seeing plaintiff riding her brother's dirt bike slowly on the grassy area near the parking area, although he could not hear what plaintiff or her brother was saying. Lee stated that he also saw plaintiff ride the bike for a second time. He testified that he lifted up his head and heard the bike's engine "rev up" and saw plaintiff "streaking" at approximately 30 miles per hour. Lee stated that he and plaintiff's brother ran after plaintiff to the spot where plaintiff went over the drop-off. He stated that he had not ridden in this area and that he did not know there were trails on the drop-off. Lee testified that he could not see the drop-off from the parking area and that the drop-off was approximately 75 to 100 feet away from the parking area. Lee stated that he did not see the drop-off until he was about 10 feet away from it, because the drop-off was overgrown with weeds. Lee further testified that he "seemed to remember" that plaintiff had been to the defendant's property on one previous occasion and that he had seen plaintiff riding a bike around her yard on one occasion prior to the accident.

Plaintiff's husband testified in pertinent part that he had told plaintiff that she could not ride his dirt bike because it was too large for her to handle. He stated that on the day of the incident, he had left plaintiff near the parking area and had gone to ride his dirt bike. Plaintiff's husband related that when he returned to the parking area, Lee told him that plaintiff had had an accident. He stated that plaintiff had never ridden on defendant's property prior to the date of the

accident. He further testified that he was familiar with the defendant's property and had ridden on it previously, but that he had never told plaintiff about any of the drop-offs on the property. Plaintiff's husband agreed that plaintiff's inexperience and her lack of familiarity with the area were "part of" the cause of plaintiff's accident. Plaintiff's husband stated that he returned to defendant's property approximately seven years after the incident, in April 1990, and that there was a rope that had been placed between the parking lot and the drop-off. He identified photographs he had taken of the scene.

Defendant Keller Nickels testified that he had not placed the rope on the property, and that it had been installed "by the military." Defendant stated that he owned the property in question with certain family members, that the land comprised approximately 50 acres and that it was located approximately 12 miles from Aurora in Kane County, Illinois. Defendant testified that either he or his brother would collect a fee from persons riding on the property, although he would sometimes let individuals ride without paying. Defendant stated that the charge was $4 per dirt bike.

Defendant stated at trial that both experienced and inexperienced riders were permitted on the property, and that riders were allowed to go wherever they felt it was safe. Defendant testified that there were bike trails on the drop-off over which plaintiff fell, and that because of this he had not erected any defeat mechanisms that would have prevented someone from going over the drop-off. Defendant stated that it would have been "[i]mpossible" to furnish riders with information that would have indicated where the hazards were located on the property. He also stated that although he had posted "No Hunting" signs on the property, he had not posted any warnings signs with respect to drop-offs on the property. Defendant acknowledged that prior to the date of the incident, he had given riders a release that informed riders "[a]ll about dirt and sticks and inclines and so on," but that he discontinued this practice because he had been "advised by [an] attorney that it didn't amount to anything anyway."

Dr. Vijar S. Kumar, a specialist in plastic and reconstructive surgery, testified in his evidence deposition that he examined plaintiff in the emergency room of Mercy Hospital on May 29, 1983. Dr. Kumar stated that plaintiff had bruising to her right hip and ankle areas, numerous soft tissue lacerations to her face, and multiple facial fractures, some of which were compound. Dr. Kumar testified that plaintiff had sustained one of the most serious types of fractures, named a LeFort III fracture, which is a "transverse fracture that starts from the nose [and] goes across the orbit of the eye" and occurs where

there has been a complete separation between the skull and the facial bones. According to Dr. Kumar, plaintiff had fractures to her nose, upper and lower jaw, her cheekbone, her eyes, and had several missing teeth. It was the opinion of Dr. Kumar, based upon his experience and to a reasonable degree of medical certainty, that plaintiff's injuries had been caused by her having crashed over the drop-off at defendant's property.

Dr. Kumar specified the surgical procedures performed upon plaintiff following the accident. He stated that these surgeries were undertaken to repair plaintiff's soft tissue lacerations and the fractures to her facial bones. Dr. Kumar testified that in order to repair the fractures to plaintiff's jaw and cheekbone, it had been necessary to cut into plaintiff's skin and drill holes into the bones, and then insert wire to hold the bones in place properly. The physician stated that plaintiff's upper and lower jaws were wired together so that her teeth would not shift out of place. Wires were also placed above and below plaintiff's eye to hold her cheekbone in place. Dr. Kumar stated that the wires to plaintiff's jaw were removed after several weeks. However, the wires placed above and below her eye were permanent placements.

Dr. Kumar also testified that plaintiff could only eat liquid foods while her jaws had been wired shut. He further stated that it was also necessary to place a small elastic sheet under plaintiff's left eye in order to provide a smooth gliding surface for the movement of the eye. Dr. Kumar testified that this sheet was later removed because of complications. Dr. Kumar stated that plaintiff's scars to her lip and chin are permanent, as well as plaintiff's loss of several teeth.

Dr. Jerry A. Brady, a specialist in oral and maxillofacial surgery, testified in his evidence deposition that he examined plaintiff at Mercy Hospital on May 31, 1983. Dr. Brady's testimony regarding the nature and extent of plaintiff's injuries was substantially similar to that given by Dr. Kumar. It was also Dr. Brady's opinion, to a reasonable degree of medical certainty, that plaintiff's injuries had been caused by her having crashed over the drop-off at defendant's property. Dr. Brady testified in detail to the extent of surgical repairs required for plaintiff's facial injuries.

With regard to damage to plaintiff's tear ducts, Dr. Brady testified that he found tear duct damage to the plaintiff when he examined plaintiff in November 1984. Dr. Brady testified that the tear duct was obstructed and that this had occurred as a result of plaintiff's facial injuries. Dr. Brady stated that the obstructed tear duct caused plaintiff to feel pain, and that he referred her to an ear, nose and

throat doctor. When asked whether he had "anything based upon a reasonable degree of medical and surgical certainty as to the extent of any tear duct problem," Dr. Brady responded, "No."

According to Dr. Brady, plaintiff suffers a degree of limited jaw function, such that she cannot move her jaw as wide or as much as previously, and her jaw does not have as much strength as it did before the accident. Dr. Brady testified that these injuries are permanent in nature.

Dr. Russell Tripp, plaintiff's dentist before and after the accident, testified that he examined plaintiff in August 1983 approximately six weeks after the incident. At that time, plaintiff had difficulty opening and closing her mouth because several of her teeth were missing and others had shifted. Dr. Tripp testified that he undertook cosmetic replacement of plaintiff's lost teeth by fitting plaintiff with temporary bridgework. Dr. Tripp stated that in April 1984, he performed reconstructive work for the placement of a fixed bridge to plaintiff's upper and lower teeth. Dr. Tripp testified that this fixed bridge work will last approximately 10 to 15 years, at which time it will probably have to be replaced, at a current cost of approximately $7,500. Dr. Tripp testified that plaintiff also suffered an abscess and required root canal work, including a crown, all of which were related to plaintiff's injuries from the incident.

Richard Kieltyka (Kieltyka), director of the Motorcycle Safety Project at Northern Illinois University, testified as an expert witness on plaintiff's behalf. Kieltyka stated that his responsibilities as director of the Motorcycle Safety Project included planning and execution of training courses for off-road motorcyclists in several counties. Kieltyka testified that he had ridden on defendant's property on several occasions before he was retained as an expert witness on plaintiff's behalf and that he was familiar with the area.

Kieltyka testified that in his opinion, defendant's property was not suitable for teaching inexperienced off-road dirt bike riders how to operate the vehicle. Kieltyka stated that although the area appeared safe from the parking area, it was actually not safe for learning to ride a dirt bike. Kieltyka stated that new riders need sufficient distance in which they can "run-out" if they lose control of the bike. Kieltyka testified that there was insufficient run-out room near the parking area, because of the drop-off.

Kieltyka stated that the drop-off area also should have been marked, because the more information a rider receives of the hazards on the land, the better the rider can manage the risks associated with those hazards. Kieltyka stated that the drop-off area normally would

have been marked with logs to block access, or red x's set up on posts. Kieltyka testified that as an alternative, a map could be provided to riders in which the hazardous areas would be shown.

Harold Bodeker (Bodeker), a motorcycle safety consultant with the Indiana Department of Education, testified as an expert on behalf of the defendant. Bodeker stated that in his opinion, plaintiff's accident was caused by her inexperience and lack of knowledge about operating a dirt bike. Bodeker testified that he did not believe the defendant's property was unsafe for a new rider learning how to operate a dirt bike in off-road conditions, and that he did not believe that defeat mechanisms would have prevented plaintiff's accident. Bodeker stated that barriers would have simply provided an additional obstacle into which plaintiff would have ridden once she lost control of the bike, and that signs would have been ineffective since plaintiff had not heeded her husband's admonition that he did not want her to ride a dirt bike on the property. Bodeker acknowledged that it is prudent, from a safety point of view, to mark hazards or hidden areas on off-road motorcycle courses and that new riders should be advised of hidden dangers in the area.

Based upon this evidence, the jury returned a verdict in favor of plaintiff and her husband and against the defendant. The jury assessed plaintiff's damages at $237,000 and reduced this amount by 50% for plaintiff's comparative fault. The jury also awarded plaintiff's husband $5,000 for loss of consortium. The trial court reduced plaintiff's damage award by amounts already paid to her in settlement of claims she had filed against other defendants not involved in this appeal. The trial court denied defendant's post-trial motion for a new trial, and this appeal followed.

## I

Defendant argues that the judgment against him should be reversed because the trial court erroneously ruled that plaintiff was, as a matter of law, an invitee upon the defendant's property.

■ Under Illinois law prior to adoption of the Premises Liability Act (Ill. Rev. Stat. 1985, ch. 80, par. 301 *et seq.*), which was not in effect when plaintiff's accident occurred and does not apply retroactively to the case at bar (see, *e.g., Dowen v. Hall* (1989), 191 Ill. App. 3d 903, 910, 548 N.E.2d 346), an owner of land owed a duty to exercise ordinary care in his repair and maintenance of the property to persons who were deemed invitees to the premises. (*Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881, 885, 522 N.E.2d 343; *Grimwood v. Tabor Grain Co.* (1985), 130 Ill. App. 3d 708, 710, 474 N.E.2d 920.)

An invitee was considered one who entered the land by express or implied invitation in order to conduct an undertaking either connected with the owner's business or connected with an activity the owner permitted to be conducted on his property. (*Tanari v. School Directors of District No. 502* (1977), 69 Ill. 2d 630, 637-38, 373 N.E.2d 5; *Sumner*, 167 Ill. App. 3d at 885, citing *Trout v. Bank of Belleville* (1976), 36 Ill. App. 3d 83, 87, 343 N.E.2d 261.) In addition, it was required that there be a mutuality of benefit, or a benefit to the landowner, in the invitee's presence on the premises. *Trout*, 36 Ill. App. 3d at 87; *Madrazo v. Michaels* (1971), 1 Ill. App. 3d 583, 586, 274 N.E.2d 635.

■ Defendant claims that plaintiff was not an invitee because plaintiff did not enter his premises by express or implied invitation. Defendant contends that there was no evidence presented at trial to demonstrate that defendant was operating a "business" on his property. Defendant also asserts that plaintiff went on the property to "satisfy her own purpose" and that there was no benefit to the defendant from her entry on the land. We disagree.

Defendant's trial testimony acknowledged that defendant held his property open to the public for their use in riding dirt bikes. Consequently, defendant extended an implied invitation to persons to use his property for an activity, *viz.* dirt-bike riding, that defendant permitted to be conducted on his land. (See *Beccue v. Rockford Park District* (1968), 94 Ill. App. 2d 179, 187-88, 236 N.E.2d 105; *DuMond v. City of Mattoon* (1965), 60 Ill. App. 2d 83, 86-87, 207 N.E.2d 320.) Defendant additionally testified that he charged $4 per dirt bike for persons' use of his land, and that this charge was imposed and collected in the instant cause. Thus, from this evidence it was established that defendant permitted the activity of dirt-bike riding on his property and that defendant benefited from allowing persons to engage in this pursuit on his land.

We are unable to conclude that defendant derived no benefit from the plaintiff's presence on his property on the theory that plaintiff originally went upon defendant's property for a purpose other than to ride a dirt bike. Defendant had collected the $4 fee for the use of a dirt bike on his property. At the time plaintiff was injured, plaintiff was engaged in the activity of riding a dirt bike for which this fee had been paid.

In light of these circumstances, we find that, at the time of her injuries, plaintiff occupied the status of an invitee. We need not and do not consider whether plaintiff would have been an invitee if she

had been injured while engaged in another activity, other than dirt-bike riding, while on defendant's property.

We also find no reversible error in the trial court's decision to resolve the issue of plaintiff's status as a matter of law, as the facts were not in dispute and demonstrated as a matter of law that plaintiff was an invitee to defendant's property at the time of her injuries. See *Sumner v. Hebenstreit* (1988), 167 Ill. App. 3d 881, 885, 522 N.E.2d 343.

II

Defendant also argues that the judgment against him should be reversed because he owed no duty to plaintiff under the Recreational Use of Land and Water Areas Act (hereinafter the Act) (Ill. Rev. Stat. 1983, ch. 70, par. 31 *et seq.*).

The purpose of the Act is to limit liability of landowners who allow persons to enter the owners' property for recreational uses. (Ill. Rev. Stat. 1983, ch. 70, par. 31.) A recreational use is defined to include motorcycling. (Ill. Rev. Stat. 1983, ch. 70, par. 32(c).) Under the Act, a landowner had no duty to keep the premises in safe condition for persons who enter the premises for recreational activities. (Ill. Rev. Stat. 1983, ch. 70, par. 33.) In addition, the owner of the property has no duty to warn of a natural or artificial dangerous condition, use, structure, or activity on the property. Ill. Rev. Stat. 1983, ch. 70, par. 33.

The Act further provides that an owner of land who permits persons to enter his land for recreational pursuits, without charge, does not thereby "[c]onfer upon such person the legal status of an invitee or licensee to whom a duty of care is owed." (Ill. Rev. Stat. 1983, ch. 70, par. 34(b).) Also, an owner who permits others to use his land for recreational activities without charge does not thereby assume responsibility or liability for any personal injury caused by any natural condition on the premises, or caused by an act of omission on the part of the landowner. Ill. Rev. Stat. 1983, ch. 70, par. 34(c).

The Act provides for an exception to these rules of nonliability under the following circumstances:

"Nothing in this Act limits in any way any liability which otherwise exists:

(a) For willful or malicious failure to guard or warn against a dangerous condition, use, structure, or activity.

(b) For injury suffered in any case where the owner of land charges the person or persons who enter or go on the land for

the recreational use thereof ***." Ill. Rev. Stat. 1983, ch. 70, par. 36.

Under the Act, a "charge" is defined as "[an] admission price or fee asked in return for invitation or permission to enter or go upon the land." Ill. Rev. Stat. 1983, ch. 70, par. 32(d).

Defendant contends that he is entitled to the limited immunity created under the Act because the plaintiff did not pay a "charge" to enter onto his property. Defendant notes that he charged a fee according to how many dirt bikes were brought onto the property. Defendant asserts that plaintiff did not pay this charge since plaintiff: (a) did not own one of the bikes brought onto the land; (b) did not intend to ride one of the bikes when she originally entered onto the property; and (c) never paid a fee for any of the bikes that had been brought onto the premises. We disagree.

█ In construing the meaning of a statutory provision, this court is guided by the plain meaning of the terms used and the ultimate objectives to be served by the statute. (See, *e.g., People v. Palmer* (1992), 148 Ill. 2d 70, 85, 592 N.E.2d 940.) The purpose of the Act is to encourage land owners to allow the public to use their property, on a casual basis, when the land is well suited for outdoor recreational pursuits. (*Bonfield v. Jordan* (1990), 202 Ill. App. 3d 638, 647, 560 N.E.2d 412.) To further this goal, the Act provides a limited immunity to land owners who permit persons to use their property free of charge for recreational activities. (Ill. Rev. Stat. 1983, ch. 70, pars. 33, 34.) Under this limited immunity, the owners are liable for personal injuries caused by the owners' willful and malicious acts or omissions with respect to the care and maintenance of the property, but are not liable for injuries resulting from the owners' ordinary negligence. (Ill. Rev. Stat. 1983, ch. 70, par. 36(a).) This limited immunity is forfeited, however, where the owner imposes a charge upon persons who enter upon the land for recreational activities. Ill. Rev. Stat. 1983, ch. 70, par. 36(b).

█ In our view, the defendant forfeited his limited immunity under the Act when the defendant imposed a charge of $4 per dirt bike upon the group that was comprised of plaintiff, her husband, brother, and social friend, and where defendant did not expressly or impliedly notify the plaintiff and her companions that there was any restriction on who could ride the dirt bikes upon the payment of this charge. The record fails to reveal any evidence that defendant would have imposed an additional charge if defendant had been told that plaintiff was going to ride her brother's dirt bike. Defendant simply had a blanket

policy of charging per bike regardless of the number of persons in the party.

The evidence at bar established that defendant permitted the group to ride dirt bikes on his land in return for the payment of a fee for each dirt bike. The record also demonstrates that plaintiff was riding on a bike for which the fee had been paid when she was injured. In light of these circumstances, we conclude that plaintiff was "charged" for her use of the dirt bike on the defendant's property. Consequently, the limited immunity of the Act did not apply to defendant's actions in the instant cause, and plaintiff was not barred, under the Act, from recovering damages from defendant, based upon principles of ordinary negligence, for the injuries that occurred during plaintiff's accident while driving the dirt bike.

### III

■■ Defendant also claims that the trial court's judgment should be reversed because the plaintiff's evidence failed to show that defendant's negligence was the proximate cause of the plaintiff's injuries. Defendant argues that proximate cause is that which produces an injury through a natural and continuous sequence of events unbroken by any effective intervening cause, citing *Novander v. City of Morris* (1989), 181 Ill. App. 3d 1076, 537 N.E.2d 1146. Defendant asserts that Illinois law draws a distinction between the proximate cause of an injury and a condition which provides an opportunity for the causal agency to act, citing *Lane v. City of Harvey* (1988), 178 Ill. App. 3d 270, 533 N.E.2d 75, and *Storen v. City of Chicago* (1940), 373 Ill. 530, 27 N.E.2d 53. Additionally, citing *Merlo v. Public Service Co.* (1942), 381 Ill. 300, 45 N.E.2d 665, defendant argues that "if the negligence charged does nothing more than furnish a condition by which the injury is made possible and that condition causes an injury *by the subsequent, independent act of a third person*, the creation of the condition is not the proximate cause of the injury." (Emphasis added.) Defendant quotes *Merlo* for the proposition that this rule applies with respect to "two wholly independent acts, *by independent parties*, neither bearing to the other any relation or control." (Emphasis added.) 381 Ill. at 317.

From this statement of legal precedent defendant argues that plaintiff's conduct was a subsequent, independent act that caused her injuries, and that defendant merely provided a condition for her accident. Defendant's argument is misplaced, however. The decisions upon which defendant relies have involved circumstances where a third party's conduct intervenes and is a superseding event that prox-

imately causes the plaintiff's injuries. (See *Merlo*, 381 Ill. 300, 45 N.E.2d 665; *Novander*, 181 Ill. App. 3d 1076, 537 N.E.2d 1146; *Lane*, 178 Ill. App. 3d 270, 533 N.E.2d 75.) Plaintiff was not a third party to her own accident.

In our view, defendant's argument is a veiled attempt to claim that plaintiff's comparative fault was the sole proximate cause of her injuries. The question of proximate cause is usually a question of fact for the jury, and we believe that the issue was properly submitted to the jury in the instant cause. (See *Rodda v. White* (1991), 222 Ill. App. 3d 989, 998, 584 N.E.2d 879.) Defendant does not claim that the jury's assessment of plaintiff's comparative negligence (50%) was against the manifest weight of the evidence, and we do not believe that the evidence of record is inadequate to justify the jury's determination in the instant cause.

We find defendant's argument on this point insufficient basis to disturb the trial court's judgment in the instant cause.

IV

Defendant claims reversible error in the trial court's denial of its motion to permit the jury to travel to Aurora, Illinois, to view the scene of the accident. Defendant argues that he had entered into a stipulation with plaintiff whereby defendant agreed not to object to plaintiff's introduction into evidence a model of the scene, and plaintiff agreed not to object to defendant's request that the court permit the jury to view the scene of the occurrence.

Defendant recognizes that the court was not bound by the parties' stipulations. (See, *e.g., Domagalski v. Industrial Comm'n* (1983), 97 Ill. 2d 228, 235, 454 N.E.2d 295; *American Pharmaseal v. T E C Systems* (1987), 162 Ill. App. 3d 351, 356, 515 N.E.2d 432; *People v. Saunders* (1985), 135 Ill. App. 3d 594, 604, 482 N.E.2d 85.) However, defendant asserts that the court should have honored the stipulation, because the court ruled that it would not allow the jury to view the scene only after defendant had "upheld" his obligations under the parties' stipulation and had agreed to the plaintiff's introduction into evidence of plaintiff's model of the scene. The defendant argues that he was prejudiced by the trial court's ruling because, in accordance with the stipulation, he waived his right to object to the plaintiff's use of the model and certain photographs that plaintiff had also offered into evidence. Defendant suggests that he was further prejudiced because he was unable to point out the deficiencies in the model.

■ We cannot accept defendant's argument that he is entitled to a new trial on this ground. Defendant could have avoided the predica-

ment of which defendant now complains had defendant requested a ruling from the trial court with respect to the jury's viewing of the scene *before* plaintiff offered her model at trial. Defendant failed to make a timely motion to preserve his position in the event that the trial court declined to allow the jury to view the scene.

Moreover, we can perceive no abuse of discretion in the trial court's denial of defendant's motion to allow the jury to view the scene. "[A] party does not have an absolute right to have the jury view the scene of an incident." (*Boner v. Peabody Coal Co.* (1991), 142 Ill. 2d 523, 535, 568 N.E.2d 883.) The decision to permit a jury to view the property at which the incident occurred is a matter for the trial court's sound discretion, taking into account such factors as whether the scene is adequately portrayed in photographs or models, whether the scene is in the same condition at the time of trial as it was at the time of the accident, and whether the jury's travel to the scene would be burdensome, expensive, or time-consuming. (*Boner*, 142 Ill. 2d at 535.) The jury's viewing of the scene does not constitute evidence, but is merely a device to facilitate the jury's understanding and application of the evidence to the issues presented at trial. *Boner*, 142 Ill. 2d at 535.

The defendant does not dispute that it would have been burdensome and time-consuming to transport the jury to Aurora, Illinois, to view the scene. The record in the instant cause reveals that the jury's ability to appreciate the scene of the plaintiff's accident was sufficiently provided for in the trial court's admission of testimony regarding photographs and a model of the property where the incident occurred. Defendant was given ample opportunity to test the extent to which these photographs and the model reflected the scene at the time the plaintiff's accident took place. The transcript explicitly indicates that in numerous instances during the course of the trial, the defendant did in fact bring to the jury's attention the deficiencies perceived by defendant in the plaintiff's model and photographs of the scene. We are unable to find an abuse of discretion in the trial court's ruling.

V

Defendant argues that the court committed reversible error in its admission into evidence of certain testimony or photographs. As defendant notes, citing *People v. Monroe* (1977), 66 Ill. 2d 317, 332, 362 N.E.2d 295, evidence is relevant under Illinois law when it has any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than

it would be without the evidence. See also *People v. Burrows* (1992), 148 Ill. 2d 196, 231, 592 N.E.2d 997.

We will consider each piece of evidence challenged by defendant in order to ascertain whether such evidence was irrelevant. We note that the trial court's determination with respect to the admissibility of evidence is a matter within its sound discretion and will be disturbed on appeal only when the court has manifestly abused its discretionary powers. *People v. Illgen* (1991), 145 Ill. 2d 353, 364, 583 N.E.2d 515; *Burrows*, 148 Ill. 2d at 231.

Defendant asserts reversible error with respect to certain evidence pertaining to the scene of plaintiff's accident. Defendant claims that the trial court erred in allowing testimony from plaintiff's husband with respect to where plaintiff rode the dirt bike off the drop-off. Contrary to defendant's assertion, plaintiff's husband did not testify at trial regarding the "exact area where his wife went over the incline." Plaintiff's husband testified only with respect to the "general area" where he believed his wife went over the drop-off. This testimony from plaintiff's husband was merely offered to draw a connection between plaintiff's fall and the location where her husband subsequently found plaintiff's glasses and two of her teeth, which he testified that he found approximately 10 feet from the floor of the drop-off. We cannot say that this testimony from plaintiff's husband, with respect to the "general area" where his wife went over the drop-off, was irrelevant.

Defendant also argues that plaintiff's brother, O'Donnell, should not have been permitted to testify that a photograph of the scene, looking upward from the bottom of the drop-off, portrayed the scene at the time of the plaintiff's accident. Defendant further challenges the admission into evidence of photographs of the scene of the accident that were taken by plaintiff's husband in April 1990.

We find no reversible error in the trial court's rulings with respect to this evidence. Photographs of the scene of the incident are relevant to the condition of the premises and are proper tools to aid the jury's understanding of the condition of the property. (See *Voyles v. Sanford* (1989), 183 Ill. App. 3d 833, 837, 539 N.E.2d 801; *Burke v. Toledo, Peoria & Western R.R. Co.* (1986), 148 Ill. App. 3d 208, 213-14, 498 N.E.2d 682.) Changes in conditions of the scene, in comparison to its appearance at the time of the plaintiff's accident, were fully explored through examination of the appropriate witnesses, and these changed conditions were therefore brought to the jury's attention. There was no abuse of discretion in the trial court's ruling with respect to this evidence.

We are also unable to find reversible error in the trial court's allowance into evidence of testimony from plaintiff's husband that the photographs he took of the scene in April 1990 showed that a rope had been placed between the parking area and the drop-off. Although subsequent remedial measures are not admissible to prove the defendant's negligence, such evidence may be admitted to show the feasibility of remedying an otherwise dangerous condition. (See *Schaffner v. Chicago & North Western Transportation Co.* (1989), 129 Ill. 2d 1, 17, 541 N.E.2d 643; *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 107-08, 576 N.E.2d 918; *Carter v. Indiana Harbor Belt R.R. Co.* (1989), 190 Ill. App. 3d 1052, 1063-64, 547 N.E.2d 488.) Evidence regarding the placement of a rope near the drop-off was thus admissible to demonstrate the feasibility of such a safety measure at the site.

We also can find no abuse of discretion in the trial court's admission into evidence of testimony regarding the presence of "No Hunting" signs on defendant's property on the date of the incident, as well as testimony to the effect that there were no signs posted regarding the hazard of the drop-off. This testimony was admissible to show the condition of the property at the time of the accident. See, *e.g., Duffin v. Seibring* (1987), 154 Ill. App. 3d 821, 833-34, 507 N.E.2d 930.

Defendant also challenges the relevancy of certain evidence pertaining to plaintiff's injuries. Initially, we are unpersuaded by defendant's contention that the court should not have admitted into evidence photographs of plaintiff taken before and after the incident. These photographs were admissible to demonstrate the nature and extent of plaintiff's injuries from the accident. (See, *e.g., Bullard v. Barnes* (1984), 102 Ill. 2d 505, 519, 468 N.E.2d 1228; *Hartness v. Ruzich* (1987), 155 Ill. App. 3d 878, 883, 508 N.E.2d 1071.) Photographs of the helmet worn by plaintiff during the accident were similarly properly admitted into evidence, as plaintiff's brother testified that the photographs accurately portrayed the condition of the helmet after he found plaintiff at the bottom of the drop-off and were relevant to demonstrate the plaintiff's condition after the accident. See, *e.g., Drews v. Gobel Freight Lines, Inc.* (1990), 197 Ill. App. 3d 1049, 1059-60, 557 N.E.2d 303.

We further find no reversible error in testimony from plaintiff's expert regarding predictable traits in people who learn to ride dirt bikes. Since defendant elicited similar testimony from his own expert regarding the predictable traits of persons who are learning to ride a motorcycle, and because defendant argued this evidence to the jury to demonstrate that plaintiff was comparatively at fault for her own in-

juries, we are unable to accept defendant's argument that such testimony was irrelevant.

The trial court also properly denied defendant's motions *in limine* with respect to the testimony of Dr. Kumar regarding the proximate cause of plaintiff's injuries. Contrary to defendant's argument, the record expressly shows that Dr. Kumar testified that, in his opinion and to a reasonable degree of certainty, plaintiff's injuries were proximately caused by her having driven over the drop-off and crashing at the bottom thereof.

We further conclude that defendant has waived his argument that the trial court should have excluded Dr. Brady's testimony regarding plaintiff's medical treatment for obstructed tear ducts. The record reflects that the trial court denied defendant's motion *in limine* to exclude this testimony from Dr. Brady because the plaintiff informed the court that the plaintiff would call the ear, nose and throat specialist to testify at trial. The record further reveals that the plaintiff did not produce the specialist to testify at trial. In view of plaintiff's failure to offer the testimony of the specialist who performed the surgery to repair plaintiff's obstructed tear ducts, defendant asserts that Dr. Brady's testimony should have been excluded. However, defendant did not renew its request that the trial court exclude Dr. Brady's testimony at the close of plaintiff's case following plaintiff's failure to call the ear, nose and throat specialist. As a result, defendant has waived this argument on appeal. See *Cunningham v. Millers General Insurance Co.* (1992), 227 Ill. App. 3d 201, 206, 591 N.E.2d 80; *Romanek-Golub & Co. v. Anvan Hotel Corp.* (1988), 168 Ill. App. 3d 1031, 1040, 522 N.E.2d 1341.

■ We find no reversible error on any of the separate points raised by defendant with regard to the admission of the challenged testimony or photographs into evidence. Based upon our review of the record, we are also unable to conclude that alleged cumulative error on these grounds warrant a new trial.

■ We further address three additional arguments raised by defendant in his claim that cumulative error deprived him of a fair trial. Defendant asserts that he was prejudiced when the trial court indicated in front of the jury that defendant was also known as "Kaneland Recreation." The record shows that this reference by the trial court was made before the jury had been selected. The defense promptly advised the court that defendant was not "Kaneland Recreation" and that defense counsel did not represent that entity. The record also indicates that plaintiff's counsel made one reference to "Kaneland Recreation" in his opening statement to the jury, and

defendant made no objection to this comment. Because these remarks were brief, fleeting, and isolated, we fail to see reversible error from their occurrence.

Defendant also objects to a question posed by plaintiff's counsel during *voir dire*, in which the attorney asked, "And if you find that injuries are serious and permanent, then substantial money would be fair?" The record reveals that defendant objected to this question, and it was not posed to the prospective jurors. An additional, rephrased question from plaintiff's counsel drew no objection from defendant. Again we are unable to find reversible error on this ground. The trial court sustained the defendant's objection to the original question posed by plaintiff's counsel, and defendant's failure to object to the question as rephrased by plaintiff's attorney constitutes a waiver of defendant's allegation of error on appeal. See, *e.g., Pharr v. Chicago Transit Authority* (1991), 220 Ill. App. 3d 509, 515, 581 N.E.2d 162.

Defendant has also waived his challenge to the propriety of testimony from plaintiff's brother regarding whether he had been given anything in writing from defendant, such as a release, at the scene prior to the plaintiff's accident. Although defendant initially objected to these questions, he did not contest the court's allowance of the rephrasing of the questions, and as such has waived the issue for purposes of appeal. See, *e.g., Pharr*, 220 Ill. App. 3d at 515.

## VI

Defendant claims that the trial court committed reversible error in the instructions it gave to the jury in its deliberation. Generally, all parties are entitled to jury instructions on their respective theories, provided there is some evidence to support this theory. (*Galowich v. Beech Aircraft Corp.* (1991), 209 Ill. App. 3d 128, 137, 568 N.E.2d 46.) Illinois Pattern Jury Instructions (IPI) are preferred whenever available, unless the IPI instruction does not accurately state the law. (134 Ill. 2d R. 239; *Rios v. Navistar International Transportation Corp.* (1990), 200 Ill. App. 3d 526, 535, 558 N.E.2d 252.) The purpose of jury instructions is to advise the jury of the applicable law, and are considered proper in form where the instructions, when viewed in their entirety, formulate a clear and complete picture of the legal principles applicable to the case. (*Villa v. Crown Cork & Seal Co.* (1990), 202 Ill. App. 3d 1082, 1087-88, 560 N.E.2d 969.) The trial court is accorded discretion in determining which jury instructions should be given, and its decision will be disturbed on appeal only if the court abused its discretion. *Galowich*, 209 Ill. App. 3d at 137.

■■ Defendant argues that the trial court should not have given the jury the long form of Illinois Civil Pattern Jury Instructions 2d (IPI Civil 2d) No. 15.01 (1971), because this instruction provided the following pertinent language with respect to the definition of proximate cause:

"It need not be the only cause, nor the last or nearest cause. It is sufficient if it concurs with some other cause acting at the same time, which in combination with it causes the injury."

There was no reversible error in this instruction, as the Illinois Supreme Court has held that the long form of IPI Civil 2d No. 15.01 does not cause jury confusion where there are only two parties to the accident, the plaintiff and the defendant, and the jury is instructed, as it was in this case, to apportion and calculate the parties' comparative negligence between the defendant and the plaintiff. *Casey v. Baseden* (1986), 111 Ill. 2d 341, 348-49, 490 N.E.2d 4; *Lewis v. Cotton Belt Route—St. Louis Southwestern Ry. Co.* (1991), 217 Ill. App. 3d 94, 113-16, 576 N.E.2d 918.

■■ We find no reversible error in the court's refusal to accept defendant's proffered jury instructions regarding duty and proximate cause (defendant's instructions Nos. 8, 9, and 11). Each of these instructions was improper because it conflicted with the court's rulings that plaintiff was an invitee and that defendant owed plaintiff a duty to exercise ordinary care. As stated above, these rulings of the trial court were wholly appropriate. It was not the province of the jury to determine whether defendant owed a duty to plaintiff, nor to decide whether that duty was founded on principles of ordinary negligence. *Hopkinson v. Chicago Transit Authority* (1991), 211 Ill. App. 3d 825, 837, 570 N.E.2d 716.

■■ Defendant also argues that the trial court erred in instructing the jury with respect to the applicability of the Recreational Use of Land and Water Areas Act. Defendant contends that the court should have given the jury the instruction with respect to this Act proffered by the defendant, rather than the instruction dealing with the Act that was suggested by the plaintiff. Because our review of the record reveals no material differences between the instruction offered by the plaintiff in comparison to the instruction suggested by defendant, we can find no reversible error in the trial court's instruction with respect to the Act.

■■ Defendant also claims that the trial court should have refused certain jury instructions offered by plaintiff (numbers 21, 25, and 26), because there was no evidence to warrant the instructions. However, our examination of the record indicates that there was suffi-

cient evidence to support the court's tender of these instructions. Consequently, we find no error in the trial court's ruling in this regard.

■■ We also find no merit to defendant's claim that the trial court erred when it gave plaintiff's instruction No. 22, which explained to the jury how to award damages to plaintiff's husband for loss of consortium. Plaintiff's husband testified that plaintiff was unable to perform household activities or engage in normal conjugal relations for several weeks following the accident. Such testimony supports giving an instruction that the jury may award damages to the spouse for loss of consortium, which includes the elements of loss of support and loss of society. See *Johnson v. May* (1992), 223 Ill. App. 3d 477, 488, 585 N.E.2d 224; *Pease v. Ace Hardware Home Center of Round Lake No. 252c* (1986), 147 Ill. App. 3d 546, 555, 498 N.E.2d 343.

■■ Defendant contends that the jury should have been instructed to reduce the award for loss of consortium to plaintiff's husband by the percentage by which it found plaintiff comparatively at fault for her injuries. In support of this argument, defendant relies on the supreme court's decision in *Blagg v. Illinois F.W.D. Truck & Equipment Co.* (1991), 143 Ill. 2d 188, 572 N.E.2d 920, in which the court held that damages for loss of consortium should be reduced to account for the comparative negligence of the injured spouse. Although plaintiff suggests that *Blagg* was decided after the instant cause was tried and therefore should not be applied retroactively, plaintiff cites no authority for this argument, and we therefore do not address this contention. In light of *Blagg,* the award of $5,000 to plaintiff's husband for loss of consortium is hereby reduced by the percentage attributed to plaintiff's comparative negligence, *i.e.,* 50%, and the trial court's judgment is modified to reflect an award to plaintiff's husband in the amount of $2,500.

## VII

Defendant also contends that the trial court committed reversible error when it refused to tender special interrogatories to the jury that were offered by the defendant.

The purpose of special interrogatories is to ascertain the jury's finding on a specific issue of ultimate fact and serve as a check upon the jury's deliberations by testing the jury's general verdict against its determination on the ultimate fact at issue in the special interrogatory. (*Delnick v. Outboard Marine Corp.* (1990), 197 Ill. App. 3d 770, 784, 555 N.E.2d 84; see also Ill. Rev. Stat. 1989, ch. 110, par. 2—1108

(jury must be required to find specially upon any material questions of fact when so requested by a party in writing).) To be in proper form, a special interrogatory must relate to a material issue of ultimate fact, should use the same terms as those set forth in the court's instructions to the jury, and should not be repetitive, misleading, confusing, or ambiguous. (*Santos v. Chicago Transit Authority* (1990), 198 Ill. App. 3d 866, 870, 556 N.E.2d 607.) When the special interrogatory is in proper form, it must be submitted to the jury, even where the subject matter of the interrogatory is also covered by an instruction. *Noel v. Jones* (1988), 177 Ill. App. 3d 773, 783, 532 N.E.2d 1050.

■■ We find no error in the trial court's refusal to submit to the jury a special interrogatory asking whether plaintiff was an invitee or a licensee, or a special interrogatory asking the jury whether plaintiff entered defendant's land for her own purpose and not for the mutual benefit of the plaintiff and the defendant. Both of these special interrogatories were properly refused, as they contradicted the trial court's ruling that plaintiff was an invitee, not a licensee on defendant's property.

Defendant also challenges the trial court's refusal to submit to the jury two special interrogatories regarding the proximate cause of plaintiff's injuries. We find no error in the trial court's refusal to submit defendant's special interrogatory No. 3, which asked, "Was the plaintiff Margaret Lundquist's negligence the sole proximate cause of her injuries?" A special interrogatory should use the same terms found in the court's instructions to the jury. (*Santos*, 198 Ill. App. 3d at 870.) In the instant cause, defendant's special interrogatory failed to refer to plaintiff's *comparative* negligence, and thus was not consistent with the court's instructions to the jury regarding the definition and scope of a plaintiff's comparative negligence.

In addition, we conclude that defendant's special interrogatory No. 3 regarding plaintiff's negligence as the sole proximate cause of her injuries was properly refused because the interrogatory was misleading. As phrased, the special interrogatory assumes that the jury had, in fact, found the plaintiff negligent in her driving the motorcycle. Recent decisions which have found proper a special interrogatory concerning the plaintiff's contributory or comparative negligence involved interrogatories that did not assume that the plaintiff had been negligent. (See *Santos*, 198 Ill. App. 3d at 868-70 (interrogatory asked "Was there contributory negligence on the part of the plaintiff before and at the time of the occurrence which was the sole proximate cause of his injuries?"); see also *Bernardi v. Chicago Steel Container Corp.* (1989), 187 Ill. App. 3d 1010, 1019-21, 534 N.E.2d 1004 (interrogatory

asked whether plaintiff "was exercising ordinary care for his own safety as to avoid proximately causing himself injury"); *Mudd v. Goldblatt Brothers, Inc.* (1983), 118 Ill. App. 3d 431, 437-38, 454 N.E.2d 754 (interrogatory asked whether plaintiff "was, before and at the time of the occurrence, exercising ordinary care for his own safety so as to avoid proximately causing himself injury").) Because the defendant's interrogatory No. 3 did not ask the jury whether it had found that plaintiff was comparatively negligent, but rather assumed that the jury had found the plaintiff comparatively negligent, we determine that the special interrogatory was properly refused by the trial court.

We are also unable to conclude that the trial court erred in its refusal to pose to the jury the defendant's special interrogatory No. 4 asking, "Was defendant's negligence the proximate cause of the accident?" (defendant's instruction No. 20, special interrogatory No. 4). This question was improper, as it failed to include a reference to whether the plaintiff sustained injuries from the accident. In order to be in proper form, a special interrogatory must include all of the elements of negligence, proximate cause, and injuries resulting therefrom. Absent adequate reference to these elements, a special interrogatory is not in proper form and should be refused. See *Bruske v. Arnold* (1969), 44 Ill. 2d 132, 136, 254 N.E.2d 453; *Noel*, 177 Ill. App. 3d at 782-86.

## VIII

Defendant claims that the jury's award of damages was excessive and requests that this court either order a remittitur or remand the cause for a new trial on damages.

It is the jury's function to determine the proper amount of damages that should be awarded to compensate the plaintiff, and this award should be reversed on appeal only if it is evident that the amount resulted from passion or prejudice, and that the amount falls outside the limits of fair and reasonable compensation and shocks the judicial conscience. *Mayol v. Summers, Watson & Kimpel* (1992), 223 Ill. App. 3d 794, 807, 585 N.E.2d 1176; *Rodda v. White* (1991), 222 Ill. App. 3d 989, 999-1000, 584 N.E.2d 879; *Schumacher v. Continental Air Transport Co.* (1990), 204 Ill. App. 3d 432, 445, 562 N.E.2d 300.

■■ The record shows the nature and extent of the plaintiff's damages and amply supports the jury's determination that plaintiff's injuries were extensive. Plaintiff had compound internasal fractures, maxillary sinus fractures, orbital rim fractures, jaw fractures, and

several missing teeth. Dr. Kumar concluded that plaintiff had a Le-Fort III type of fracture, which is one of the most serious face fractures, involving a complete separation between the skull and the facial bones. Plaintiff underwent numerous surgeries to correct her injuries, and dental work was also extensive. Plaintiff has a permanent scar to her lip and chin, and fixed bridge work to replace her missing teeth. Plaintiff testified that she was in considerable pain during her recuperation and that she missed several weeks from work. In light of this evidence, we cannot say that the jury's award to plaintiff of $267,000 in damages, reduced by her own comparative negligence of 50% to a net award of $133,500, is so excessive that it should be set aside on appeal.

For the reasons stated, the judgment entered by the trial court against the defendant and in favor of the plaintiff is affirmed; the judgment of $5,000 in favor of plaintiff's husband for loss of consortium is reduced to $2,500, and the judgment in this respect is affirmed as modified.

Affirmed in part; affirmed as modified in part.

JIGANTI, P.J., and LINN, J., concur.