WINIFRED RYAN, Plaintiff-Appellant, v. MARIANNE KATZ, Defendant-Appellee.

Second District   No. 2—91—0965

Opinion filed September 23, 1992.

Paul W. Barbahen, of O'Brien & Barbahen, of Chicago, for appellant.

Donald Ridge & Associates and James S. Tukesbrey, of Law Office of James S. Tukesbrey, both of Waukegan, for appellee.

JUSTICE GEIGER delivered the opinion of the court:

The plaintiff, Winifred Ryan, was injured when her car was struck by a car driven by the defendant, Marianne Katz. A jury found the defendant negligent and awarded the plaintiff $8,300 in damages. The plaintiff appeals the damage award, arguing that the defendant's closing argument misstated the evidence of damages. We affirm.

Before discussing the substance of this appeal, we feel bound to comment on a matter of appellate procedure. Supreme Court Rule 341(e)(6) (134 Ill. 2d R. 341(e)(6)) requires an appellant's statement of facts to "contain the facts necessary to an understanding of the case,

stated accurately and fairly, without argument or comment, and with appropriate reference to the pages of the record on appeal." The plaintiff's initial statement of facts consisted of three short paragraphs with almost no citations to the record. The statement of facts completely omitted any summary of any of the testimony or argument at trial. On our own motion, we ordered the plaintiff to file "a complete statement of the facts needed to understand the case fully, with appropriate citations to the record on appeal, or the brief will be stricken."

The plaintiff's counsel filed an amended statement of facts slightly over one page long. Aside from a few additional record references, the only new matter is a two-paragraph summary of *part* of the specific trial testimony and closing argument on which the plaintiff relies to argue for reversal. Originally, this summary was placed (improperly) in the "Argument" section of the plaintiff's brief.

The plaintiff has failed, after due warning, to comply with Rule 341(e)(6). The rules of procedure are rules and not merely suggestions (*People v. Wilk* (1988), 124 Ill. 2d 93, 103; *Roberson v. Liu* (1990), 198 Ill. App. 3d 332, 335-36). We would be well within our discretion under Rule 375(a) (134 Ill. 2d R. 375(a)) to strike the plaintiff's brief and dismiss the appeal. However, because the record is not long and the issues are simple, we decline to penalize the plaintiff so severely for the lapses of her appellate counsel. See *Falk v. Martel* (1991), 210 Ill. App. 3d 557, 559; *Coffey v. Hancock* (1984), 122 Ill. App. 3d 442, 444.

We summarize the relevant testimony. At the time of the accident, the plaintiff's car was sitting at an intersection. The collision pushed her car across the intersection and off the road. The plaintiff was thrown forward; her head hit the dashboard, and her left knee hit a light in the area of the fuse box underneath the dashboard. The defendant exited her car and asked the plaintiff how the plaintiff felt. The plaintiff said she was all right.

John Anderson of the Lake County sheriff's department investigated the accident. He estimated that there was about $250 worth of damage to the rear of the plaintiff's car. The plaintiff was not visibly injured, although she told Anderson she felt some pain in her neck. No part of her body was cut or bleeding. Paramedics arrived, but the plaintiff drove home. When she arrived home at about 9 p.m., she told her husband, Edward Ryan, that she felt some injuries. Because it was late, her husband did not drive her to a hospital that day.

The next morning, the defendant called her house and asked the plaintiff how she was feeling. According to the defendant's testimony, the plaintiff responded that she was all right. That day, the plaintiff

and her husband went to a doctor. Three days after the accident, the plaintiff went to a hospital emergency room. On May 17, 1988, she made the first of her several visits to Dr. Thad Penn, an orthopedic surgeon.

The plaintiff testified that, before the accident, she was in excellent health. In 1980 or 1981, she injured her right knee, but she had completely recovered from that injury. In 1987, she was treated at a hospital for a right wrist fracture. By the time of the collision with the defendant, the plaintiff's right wrist was weak, but it gave her pain only after the accident. Her only hospitalization before the accident was for gallbladder surgery in February 1988. According to her husband, the plaintiff had never complained, before the accident, of any problems with her neck, left shoulder or left knee.

Both the plaintiff and her husband stated that the accident had greatly reduced the plaintiff's activity. Before the accident, the plaintiff did most of the couple's housework, cooking and laundry. After the accident, her husband did most or all the laundry, cooking, housework and grocery shopping. Before the accident, the plaintiff regularly went swimming, dancing, skiing, skating and golfing with her husband. After the accident, she was unable to engage in these activities. According to her husband, the accident caused the plaintiff a persistent limp, and she regularly woke up during the night with pain. He had to help her get dressed. The plaintiff admitted that, since the accident, she travelled twice to Ireland and once to Florida, with the former two trips necessitated by illness in her family. The plaintiff testified that, as of the time of trial, she still experienced pain, which she treated with liniment, aspirin, heat, and whirlpool baths.

Dr. Penn, the plaintiff's expert witness, testified that, on her first visit to his office, the plaintiff told him that, after her accident, she developed pain in her neck, shoulders, and left knee. Two days after the injury, she developed more pain in these areas, and, four days after the accident, she underwent X rays at Victory Memorial Hospital in Waukegan.

At her first consultation, the plaintiff told Dr. Penn that her left knee was swollen and bruised, especially over the inner side and the back side. She also told him that she experienced pain with the movement of her head and neck and that her right shoulder pain, which she had experienced since fracturing her right wrist, had worsened since the accident.

Directly after taking this patient history, Dr. Penn examined the plaintiff. The plaintiff's neck was tender in areas, and there was some limitation on her ability to move her neck without pain. Movement of

the plaintiff's right shoulder was slightly limited. However, Dr. Penn could not say if the problems in the plaintiff's right shoulder were the result of the accident. There was a large area of ecchymosis, or a hemorrhage into the skin, and accompanying discoloration on the inner side of the thigh. Dr. Penn opined that this ecchymosis was caused by trauma and was consistent with a knee striking a portion of the dashboard. The plaintiff had tenderness elsewhere in her knee, but knee motion was not impaired, there was no swelling in the joint, and the ligaments were intact. Dr. Penn's diagnoses were "sprain, cervical spine, strain, left shoulder girdle, and contusion, left knee." Dr. Penn told the plaintiff to take ibuprofen, as she had been doing since the X rays, and to start physical therapy.

The plaintiff next visited Dr. Penn June 14, 1988. She reported some improvement in her neck and left shoulder. She reported swelling and cramping of her left knee, and she experienced pain in her left knee when she walked or when she extended the knee. The knee buckled occasionally and it felt stiff after periods of inactivity. Dr. Penn noted that the various areas of discoloration about the knee had "largely faded away." The knee was still tender, but there was no swelling in the joint and no ligament damage. Dr. Penn testified that the plaintiff did not report any neck or shoulder pain after June 1988.

On July 12, 1988, the plaintiff again visited Dr. Penn, still complaining that she experienced knee pain when she stood or walked, that she still limped, and that her knee occasionally buckled. Dr. Penn examined the plaintiff. He noticed some tendency to limping and tenderness in the knee area. There was no swelling, motion was not impaired, and the ligaments were still intact.

On July 28, 1988, Dr. Penn performed arthroscopic surgery on the plaintiff and discovered mild inflammation in the lining of the pouch in front of the knee joint and in the lining of the joint. The knee showed mild degeneration that long predated the accident. The cartilage and ligaments were all normal. The arthroscopy revealed nothing wrong with the left knee joint itself. There was no contusion to the bone itself, and the plaintiff's pain would go away after the contusion to the soft tissue around the bone healed.

On August 11, the plaintiff again saw Dr. Penn. She reported that her left knee was stiff, which was common after arthroscopy.

On September 1, 1988, the plaintiff next visited Dr. Penn. The plaintiff reported reduced pain and swelling about the left knee. Dr. Penn's examination revealed a good range of knee motion with no swelling. The plaintiff had a full range of motion in her left shoulder with pain when the shoulder was elevated above a right angle.

On her next visit, on December 5, 1988, the plaintiff reported continuing pain in her left shoulder, occasional limping, and pain in the left knee joint. Dr. Penn's examination revealed nothing to change his diagnosis or his recommendation that the plaintiff continue physical therapy and the use of anti-inflammatory medications. Dr. Penn told the plaintiff to come back as needed. The plaintiff did not return for further examinations. However, she stayed in contact by telephone with Dr. Penn from December 1988 through February 1991.

Dr. Penn stated that, in his opinion to a reasonable degree of medical certainty, the plaintiff had suffered a contusion in her left knee and that the preexisting arthritis in her knee had become painful as a result of the accident. He conceded on cross-examination that the complaints the plaintiff made in the fall of 1988 could have been associated with the plaintiff's age and build and not caused by the accident. Dr. Penn also conceded that, in his deposition of March 15, 1991, he stated his opinion that the plaintiff did not need any further surgery in her left knee. At the time of trial, Dr. Penn had no current diagnosis regarding the plaintiff's knee condition or other problems. He had no opinion as to any possible triggering cause, other than the accident, of the plaintiff's conditions.

The defendant's expert witness was Dr. Robert Stone, an orthopedic surgeon who reviewed the emergency room records and the report of the arthroscopic surgery and also examined the plaintiff on November 29, 1991. The plaintiff told Dr. Stone that arthroscopic surgery had helped lessen the plaintiff's knee pain, but that the pain and swelling had returned and that her knee condition interfered with walking and weight bearing. She reported neck pains that she had not felt before May 1988.

Dr. Stone found that the plaintiff's gait was normal, that there was no atrophy in her quadriceps muscle, and that there was no swelling in the knee or fluid inside the knee joint itself. The plaintiff could extend her knee fully and stability in the knee was normal. The plaintiff's neck had very good flexion and range of motion, and the condition of her cervical spine was what Dr. Stone would expect considering her age. Dr. Penn's notes implied that the plaintiff had recovered from any injury to her cervical spine. The degenerative arthritis revealed by the X rays predated the accident.

Dr. Stone believed to a reasonable degree of medical certainty that, by the time he examined the plaintiff, she had fully recovered from any injuries she may have suffered to her neck and cervical spine; that the plaintiff's complaints to him of pain were not related to the injury; that there was no residual functional impairment of the

plaintiff's left knee; that the accident did not cause any impairment to the plaintiff's right wrist; that there was no injury or damage to the knee joint itself; and that the plaintiff did not need further medical care for any injuries caused by the accident.

Dr. Stone stated that the accident could have caused the sprain in her left shoulder. Although the accident could have aggravated preexisting arthritis of the plaintiff's neck, the medical records Dr. Stone reviewed showed that the plaintiff experienced neck pain for only about a month and a half after the accident.

Although he conceded that the ecchymosis in the plaintiff's thigh was caused by the accident, Dr. Stone did not believe that the plaintiff's reports of pain in the back of her knee were consistent with her having struck her knee on a car dashboard. Dr. Stone believed that the plaintiff had contusions to the tissue around the knee, though not to the knee joint itself. Although trauma to the knee could make an asymptomatic condition such as arthritis painful, Dr. Stone did not believe that the accident aggravated the arthritis in the plaintiff's knee. Had the plaintiff struck her knee on the dashboard, the pain would have been in the front of her knee rather than the back. Even if she did strike her knee on the dashboard, Dr. Stone found no objective evidence of any traumatic aggravation of her arthritis. Dr. Stone's expert opinion, based in part on Dr. Penn's arthroscopic examination of the plaintiff, was that, far more probably than not, the accident did not aggravate the arthritis in the plaintiff's knee or in her neck.

The plaintiff introduced evidence of the following accident-related expenses: $950 for automobile repair; $71.40 for storage of her car; $547 for emergency room care; $396 for physical therapy; $791 for treatment by Dr. Penn; $1,937.05 for arthroscopic surgery; $380 for anesthesiology; $17.31 for X rays taken July 27, 1988; $82 for radiology at Victory Memorial Hospital; $91.54 for prescription medications; $1,042.50 for a membership in the Chicago Health Club, where she regularly visited to treat her injuries with whirlpools, swimming and other means; and $35 for a June 3, 1988, visit to Dr. Silverio Agujar, Jr. Dr. Agujar testified that, in February 1988, he performed gallbladder surgery on the plaintiff, but that he never treated her for any injuries she received in her accident.

After closing arguments, the jury returned a verdict for the plaintiff in the amount of $8,300. The plaintiff filed a post-trial motion, which, after a hearing, the court denied. The plaintiff timely appealed.

On appeal, the plaintiff does not maintain that the damage award was unreasonably low or against the weight of the evidence. She argues only that there must be a new trial on damages because the

defendant's attorney, in his closing argument, (1) improperly told the jury that the plaintiff's expert witness, Dr. Penn, testified that by June 14, 1988, the discoloration about the plaintiff's left knee "was gone"; (2) stated that Dr. Penn testified that the mild degenerative changes in the plaintiff's left knee were not caused by the accident, but did not mention Dr. Penn's further statement that the plaintiff had no pain in her left knee until after the accident; and (3) stated that Dr. Penn testified that arthroscopic surgery revealed "nothing wrong" with the plaintiff's knee joint. For several reasons, we decline to order a new trial on damages.

■ First, the plaintiff waived all of the alleged errors by failing to raise them *with specificity* in her post-trial motion. Supreme Court Rule 366(b)(2)(iii) (134 Ill. 2d R. 366(b)(2)(iii)) states that, on review of a judgment in a civil jury case, a party may not urge as error any point not specified in the post-trial motion. The purposes of this rule are (1) to allow the trial judge to review his decisions without the pressure of an ongoing trial; (2) to allow the reviewing court to determine whether the trial court had an adequate opportunity to correct any alleged error; and (3) to prevent litigants from stating mere general objections and then raising on appeal arguments that the trial judge was not given an adequate opportunity to consider. (*Brown v. Decatur Memorial Hospital* (1980), 83 Ill. 2d 344, 349-50.) A party seeking to preserve an issue for review must raise the issue with enough specificity and clarity to serve the purposes of Rule 366(b)(2)(iii). *Andersen v. Resource Economics Corp.* (1990), 133 Ill. 2d 342, 347; *Williamson v. Opsahl* (1981), 92 Ill. App. 3d 1087, 1090.

The plaintiff's post-trial motion states only that "[d]efendant's attorney made highly improper and prejudicial arguments to the jury." The plaintiff did not raise this issue at the hearing on her motion. We conclude that she has waived the issue on appeal.

There is an additional reason to find that the plaintiff has waived any challenge to two of the three allegedly improper remarks. Only the first of the above-noted remarks met with the plaintiff's timely objection at trial. By failing to object to allegedly improper closing argument, a party waives any later claim of error on this score. *Oakleaf of Illinois v. Oakleaf & Associates, Inc.* (1988), 173 Ill. App. 3d 637, 652-53; *Cahill v. Boury* (1986), 144 Ill. App. 3d 413, 415.

Although we may disregard the waiver rule in the interests of justice (*Riley v. Fair & Co., Realtors* (1986), 150 Ill. App. 3d 597, 600), we will not do so unless defense counsel's improprieties deprived the plaintiff of a fair trial. (See *Oakleaf*, 173 Ill. App. 3d at 652-53.) Even where a party has preserved the issue, counsel's improper arguments

will not warrant reversal absent a showing of substantial prejudice. (*Bresland v. Ideal Roller & Graphics Co.* (1986), 150 Ill. App. 3d 445, 453-54; *Nunley v. Mares* (1983), 114 Ill. App. 3d 779, 790.) There is no such showing here.

The plaintiff maintains first that the defendant's counsel improperly stated that Dr. Penn testified that by June 14, 1988, the plaintiff's knee discoloration was "gone," whereas Dr. Penn actually testified that, by June 14, 1988, the discoloration had "largely faded away." Even if this minuscule variance placed defense counsel's remark outside the broad latitude given counsel in closing argument (see *Bresland*, 150 Ill. App. 3d at 454), any prejudice is speculative at best.

The plaintiff maintains next that the defendant's attorney reminded the jury that, even before the accident, the plaintiff had arthritis in her knee, but that the defendant's attorney improperly failed to add that there was pain only after the accident. The plaintiff does not argue that the defendant's attorney misstated the evidence, but only that he emphasized that part of the evidence most favorable to his client. We do not believe that this is improper. Also, the plaintiff's counsel had ample opportunity to remind the jury of those facts that the defendant's attorney chose not to emphasize. The plaintiff has established neither impropriety nor prejudice.

The plaintiff asserts finally that defense counsel improperly stated that Dr. Penn testified on cross-examination that arthroscopic surgery revealed "nothing wrong" with the left knee joint. However, on cross-examination, Dr. Penn admitted that, after arthroscopy, he did no treatment inside the plaintiff's knee, even though he would have done so if necessary. The defendant's counsel next asked Dr. Penn if it would be fair to say "that after you were actually in the knee and looking inside the knee you saw nothing wrong with the left knee joint?" Dr. Penn answered, "[t]hat is correct." The challenged remark was properly based on the evidence.

Taken separately or collectively, the alleged improprieties in the defendant's closing argument do not warrant a new trial on damages. Any misstatements of the evidence were slight and came in the context of a reasonably lengthy closing argument addressing all the evidence. Testimony on damages included not only Dr. Penn's medical opinions but also those of the defendant's expert witness, Dr. Stone. This medical evidence was conflicting on how much knee damage the plaintiff sustained from the accident. The jury also heard testimony on damages from the plaintiff and her husband. We cannot determine the relative weight the jury gave each witness' testimony. The court

instructed the jury that counsel's arguments were not evidence. Any improper statements in the defendant's closing argument did not deprive the plaintiff of a fair trial.

The judgment of the circuit court of Lake County is affirmed.

Affirmed.

WOODWARD and DOYLE, JJ., concur.