2025 IL App (4th) 250410-U

NOS. 4-25-0410, 4-25-0411, 4-25-0412, 4-25-0413, 4-25-0414, 4-25-0415, 4-25-0416,

4-25-0417 cons.

NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
September 10, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| *In re* A.B., Ma. B., Au. B. and M.B., Minors | ) | Appeal from the |
| | ) | Circuit Court of |
| (The People of the State of Illinois, | ) | Lee County |
| Petitioner-Appellee, | ) | Nos. 23JA31 |
| v. | ) | 23JA32 |
| Michael B. and Jill J., | ) | 23JA33 |
| Respondents-Appellants). | ) | 23JA34 |
| | ) | |
| | ) | Honorable |
| | ) | Theresa M. Friel-Draper, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices Vancil and Grischow concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The appellate court dismissed the appeal for respondents' failure to comply with
        Illinois Supreme Court Rule 341(h)(7) (eff. October 1, 2020).

¶ 2         In October 2024, the State filed petitions to terminate the parental rights of

respondents, Michael B. and Jill J. (referred to individually as father and mother) to their minor

children, A.B. (born August 2023), Ma. B. (born April 2010), Au. B. (born March 2018), and M.B.

(born June 2022). Following the fitness and best-interest hearings, the trial court granted the State's

petitions and terminated respondent's parental rights.

¶ 3                             I. BACKGROUND

¶ 4         In September 2022, in Kane County, Illinois, respondents stipulated to a finding

the minors, Ma. B., Au. B, and M.B., were in an environment injurious to their welfare as defined by section 2-3(1)(b) of the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/2-3(1)(b) (West 2022)). The adjudication order noted the State's evidence showed a "sibling was born substance exposed to cocaine," both respondents had a "history of substance abuse and have not completed services," and there was "a history of domestic violence *** between April and May 2022," while mother was pregnant. In October 2022, the trial court entered a dispositional order making Ma. B., Au. B., and M.B. wards of the court. Custody and guardianship was placed with the Illinois Department of Children and Family Services (DCFS). Respondents were ordered to cooperate with all directives from DCFS.

¶ 5    In August 2023, in La Salle County, Illinois, the State filed a petition for adjudication of wardship regarding A.B., contending respondents' other children, Ma. B., Au. B., and M.B., were already in the care of DCFS "due to issues of substance abuse and domestic violence." In September 2023, the trial court entered an adjudicatory order, finding A.B.'s environment was injurious to her welfare as defined by the Juvenile Court Act (*id.*). The court subsequently entered a dispositional order making A.B. a ward of the court and placing her in the custody of DCFS. Respondents were again ordered to cooperate with all directives from DCFS.

¶ 6    The matter involving A.B. was transferred to Lee County, Illinois, in September 2023. The matters involving Ma. B., Au. B., and M.B. were transferred to Lee County in October 2023.

¶ 7    On October 18, 2024, the State filed petitions to terminate respondents' parental rights as to all minors. The petitions alleged both respondents had (1) failed to maintain a reasonable degree of interest, concern, or responsibility as to the minors' welfare (750 ILCS 50/1(D)(b) (West 2024)), (2) failed to make reasonable efforts to correct the conditions that caused

the minors to be removed during a nine-month period after the adjudication of neglect (*id.* § 1(D)(m)(i), and (3) failed to make reasonable progress toward the return home of the minors during a nine-month period after the adjudication of neglect (*id.* § 1(D)(m)(ii)). The relevant nine-month period was defined as November 6, 2023, to August 6, 2024.

¶ 8                                     A. Fitness Hearing

¶ 9          On February 24, 2025, the trial court held a hearing on the State's petitions to terminate respondents' parental rights. The court took judicial notice of numerous client service plans and a certified conviction for father, showing he had been convicted of unlawful delivery of a look-alike substance in De Kalb County, Illinois, in July 2024 and sentenced to 200 days in jail, commencing October 1, 2024.

¶ 10         Felicia Carter testified on behalf of the State. Carter was the caseworker for the minors and respondents. She stated the case originated with "intact services for domestic violence." She also stated mother and M.B. tested positive for cocaine during pregnancy. Carter referred mother for a substance abuse assessment in November 2023, which she completed in July 2024. The substance abuse assessment recommended 30 hours of treatment and aftercare, which mother began working on in August 2024. She stated mother failed to successfully complete substance abuse treatment during the relevant nine-month period. From December 2023 through June 2024, mother missed numerous drug screenings. Carter agreed that during the "few times" mother submitted to drug testing, she tested positive for cocaine. She stated mother was referred for a mental health assessment in November 2023, but she failed to complete the assessment because the agency required her to first complete substance abuse treatment. Carter stated mother was not referred for domestic violence classes or "couples counseling" until the substance abuse and mental health issues were addressed. Carter stated mother had been on a waiting list for

parenting classes since November 2023, so the classes had not been completed. She said mother was involved in a car accident in the summer of 2024, which impacted her ability to travel. Although mother cooperated with signing paperwork for the agency, was renting an apartment in Mendota, Illinois, and had been working at a restaurant since January 2025, the apartment was not large enough for four children. She confirmed mother had failed to complete any of the ordered services from the integrated assessment during the relevant nine-month time period, although mother interacted appropriately with the minors during supervised visits.

¶ 11 Regarding father, Carter stated she referred him for a substance abuse assessment in November 2023. He completed the assessment in July 2024 and was recommended to complete "50 to 75 hours" of treatment with "1 to 6" months of after care. She said father began treatment in August 2024 but had not completed treatment at the time of the fitness hearing. Carter stated father also missed numerous drug screenings during the nine-month period and tested positive for cocaine in June 2024. She stated father also failed to complete the mental health assessment. She said father successfully completed parenting education classes in August 2023, but she was unable to verify his employment. She described father's interactions with the minors during supervised visits as appropriate. Carter confirmed father had not completed any ordered services during the relevant nine-month time period.

¶ 12 On cross-examination by mother's counsel, Carter agreed mother suffered "significant" injuries from a car accident in the summer of 2024, which affected her ability to complete services. During redirect examination, Carter estimated mother had been bedridden from the car accident for a "couple months." During cross-examination by father's counsel, Carter agreed father had completed 34 hours of substance abuse treatment prior to being incarcerated.

¶ 13 Father testified on his own behalf. He stated he successfully completed parenting

classes but admitted he did not complete substance abuse or mental health treatment. He stated he was discharged from services for being incarcerated and later for having to reschedule a Zoom meeting because he was working at a hotel. He stated he was also involved in the car accident where mother had been injured and that it had occurred in October 2023, not in 2024.

¶ 14 The trial court stated both respondents had failed to prioritize substance abuse treatment in order to have their children returned home. The court was not persuaded by transportation issues for either respondent because they had been encouraged to use agency transportation services but chose to use their insurance services, which required longer advance notice to arrange transportation. The court noted the older minors had been in substitute care for "two and a half years" and A.B. had been in care for her entire life. The court concluded respondents had failed to complete services and stated, during the relevant nine-month period, "nothing was done." The court granted the State's petitions on all three counts and continued the matter for a best-interest hearing.

¶ 15 B. Best-Interest Hearing

¶ 16 A best-interest hearing was conducted on April 14, 2025. Various best-interest reports were noted by the trial court, with no additions or corrections requested by the parties. Carter testified again on behalf of the State.

¶ 17 Carter stated Ma. B., Au. B., and M.B. had originally been placed with their grandmother, and A.B. had been placed in traditional foster care. She noted the grandmother passed away in January 2025, and the minors were placed with the same foster parents as A.B.

¶ 18 Ma. B. and Au. B. were eventually placed in a fictive kin home. Their foster parents were willing to provide permanency for both. Carter described their placement as "[v]ery loving, caring." Ma. B. was involved in extracurricular activities and had begun attending counseling.

¶ 19　　　　　　M.B. was placed in a different fictive kin home. Carter described the place as good and stable and stated M.B. was "very happy." Carter stated the foster parents facilitated sibling visits more than four times a month. M.B.'s placement was willing to provide permanency.

¶ 20　　　　　　A.B. remained in her foster placement, which Carter described as "loving and supportive." Carter stated A.B. was "developmentally delayed" and required specialized care. She was in physical, occupational, and speech therapies. Her foster parents offered permanency through adoption.

¶ 21　　　　　　Respondents presented no evidence.

¶ 22　　　　　　The trial court stated the testimony revealed the minors were in "safe, loving and supportive environment[s] where it's very nurturing for the siblings." The court "commend[ed]" the foster parents for facilitating sibling relationships for the minors. The court found the State had shown by a preponderance of the evidence it was in the minors' best interest to terminate respondents' parental rights.

¶ 23　　　　　　This appeal followed.

¶ 24　　　　　　　　　　　　　　II. ANALYSIS

¶ 25　　　　　　On appeal, respondents contend the trial court's determination they were unfit was against the manifest weight of the evidence. They do not challenge the court's best-interest finding; therefore, we confine our review to the fitness hearing.

¶ 26　　　　　　The State requests we dismiss respondents' appeal for violating Illinois Supreme Court Rule 341 (eff. Oct. 1, 2020). Rule 341(h)(7) requires the argument section of an appellant's brief to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and pages of the record relied on." Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020). Compliance with Rule 341 is not a mere suggestion, and it is within this court's discretion to strike

an appellant's brief and dismiss the appeal entirely for failing to comply. *Niewold v. Fry*, 306 Ill. App. 3d 735, 737 (1999). However, if the violations of supreme court rules do not "hinder or preclude our review," the brief need not be stricken in whole or in part. (Internal quotation marks omitted.) *Gaston v. City of Danville*, 393 Ill. App. 3d 591, 601 (2009).

¶ 27 "It is an elementary rule of appellate practice that an appellant may not make a point by merely stating it, without presenting any arguments or reasons in support of it[,] and this court will not search through the record for possible errors on which a judgment may be reversed." *Reichelt v. Anderson*, 222 Ill. App. 176, 179 (1921). As a reviewing court, we are

> "entitled to have the issues clearly defined and supported by pertinent authority and cohesive arguments; [the appellate court] is not merely a repository into which an appellant may 'dump the burden of argument and research,' nor is it the obligation of this court to act as an advocate or seek error in the record." *U.S. Bank v. Lindsey*, 397 Ill. App. 3d 437, 459 (2009) (quoting *Obert v. Saville*, 253 Ill. App. 3d 677, 682 (1993)).

¶ 28 Our review of respondents' brief on appeal confirms it is devoid of argument. The only reason we were able to discern respondents' main contention on appeal was because respondents explicitly make it clear in the section entitled "Issues Presented for Review" and from the heading of the argument section. The authorities cited by respondents in their brief are relevant to the standard of review only. While the record is sufficiently straightforward to understand the nature of the proceedings, respondents' failure to comply with Rule 341(h)(7) is so egregious it would require this court to take up the role of advocate and seek error in the record on their behalf. We cannot endorse such a blatant violation of Rule 341(h)(7). Accordingly, we agree with the

State and dismiss respondents' appeal in its entirety. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020).

¶ 29                                    III. CONCLUSION

¶ 30          For the reasons stated, the appeal is dismissed.

¶ 31          Dismissed.